## BREWER v. STRONG'S EX'RS.

1. An action of detinue will lie against an executor, upon an allegation that the chattel was in possession of the testator, and after his death came to the hands of his executor, who detains it as such; and to entitle the plaintiff to recover in such a case, he must prove not only his own property in the thing, but the possession, as well of the testator as his personal representative.

2. Where a charge to the jury depends upon the evidence which was adduced, and is proper, or otherwise according to the proof, the bill of exceptions should recite so much of the evidence as shows the error of the charge, in order to authorize a reversal of the judgment.

3. Where the defendant pleads the general issue, he admits for the purposes of the trial, that the declaration discloses a good cause of action, and when upon this state of the pleadings, the plaintiff proves what he has undertaken to do, he is entitled to a verdict, although the court may afterwards arrest the judgment for the defectiveness of the declaration.

Writ of error to the Circuit Court of Fayette.

THE plaintiff in error brought an action of detinue against the defendants, as executors of the last will, &c., of Wm. M. Strong, deceased. The declaration is in usual form, alledging the possession by the plaintiff of two slaves, particularly designated, their loss by him, and their finding and detention by the defendants. Issues were joined upon the pleas of *non detinet* and the statute of limitations. Upon the trial, a bill of exceptions was sealed at the instance of the plaintiff, from which it appears, that evidence was adduced by him tending to show, that the property in the slaves in question was in him; and their detention by the defendants. Evidence was then offered by the defendants, "to show that the property of the slaves sued for was in their testator." The evidence being closed, the court charged the jury that the plaintiff could not recover in this action, because he had sued the defendants in their respresentative capacity. A verdict

was returned for the defendants, and judgment thereupon rendered.

L. CLARK, for the plaintiff in error, insisted that detinue would lie against an executor or administrator. [See 1 Saund. Rep. 217; Wms. on Ex. 1065, 1088; 1 Chit. Pl. 119, 121; W. Jones' Rep. 173; 3 Bac. Ab. 99; 3 Dana's Rep. 36, 44; 6 Leigh's Rep. 344; 8 Porter's Rep. 574; 3 Bibb's Rep. 510.]

P. MARTIN and B. W. HUNTINGTON, for the defendants. If the slaves came to the possession of the defendants, the action should have been brought against them in their individual characters, and cannot be sustained against them as executors. [Vin. Ab. Detinue, D; 3 Har. & McH. Rep. 203; 2 Munf. 479; 3 Stewt. R. 221; 1 Hayw. R. 398; 2 Ala. R. 555.]

COLLIER, C. J.—To entitle the plaintiff to recover in an action of *detinue*, he must prove not only his own property in the goods, but the *detainer* by the defendant; for the detention is the gist of the action. It has therefore been held, that detinue does not lie against the executor of a bailee, who has destroyed the chattel; [Bul. N. P. 50;] and if there be several executors, and one only has the possession, the action must be brought against him alone. [Bro. Ab. tit. Detinue, pl. 19; 1 Saund. Pl. & Ev. 436; 1 C. & J. Rep. 545; 1 Tyrw. Rep. 445; 1 Price's P. C. 71; 2 Stark. Ev. 493 to 495; 6 Leigh's Rep. 42.]

In Mansell's adm'r v. Israel, 3 Bibb's Rep. 510, it was said, that where goods are bailed to a testator, or intestate, upon a contract to deliver them, or where he sells and agrees to deliver specific articles at a future day, and the goods come to the hands of the executor or administrator, there is no room to doubt the liability of the latter in an action of detinue. In such case, the reciprocal right and obligation is said to arise *ex contractu*. Although there may be more room to doubt the propriety of the action where the obligation to deliver the goods does not arise from contract, yet it is said even in such case, where the goods are detained by the defendant as execu-

tor, or administrator, there seems to to be no substantial reason why he should not be sued in the character in which he detains them. "Upon the score of authority, the propriety of the action admits of no doubt; for it is settled, where goods were taken away and remained in specie in the hands of the wrongdoer or his executor, that replevin or detinue would lie against the executor to recover them. [1 Chit. Pl. 119; 1 Saund. Rep, 216, a; Sir W. Jones, 173-4.]

So it has been held, that the action of detinue is given in respect to the supposed possession of the defendant, and therefore will not lie where he has never had it.   [6 Leigh's Rep. Rep. 42.]   In that case the learned Judge who delivered the opinion of the court remarks, "On the first suggestion of the question, I was somewhat doubtful whether the action of *detinue*, (in which the testator might have waged his law, 3 Blac. Com. 152, 345,) would lie against an executor upon the detention of his testator.   It seems however unquestionable that it does; and the declaration charges the finding, or bailment and detention by the testator, and the subsequent pessession and detention by the executor; and this last, as we have seen, is altogether essential. [See Rastall's Entries, 210; 7 Wentworth, 647, 648.]   But still it does not lie unless the executor has possession.   [1Wms. Saund. 216, note 1; Bro. Abr. Detinue, 19; 8 Vin. Ab. Detinue, D, pl. 1, 4; D, 5, pl. 19; B, 2, pl. 1."

The question considered in 6 Leigh, was again argued and elaborately considered in Catlett's Ex'rs v. Russell, reported in the same volume, p. 344.   The opinions of the Judges were delivered *seriatim*, and all concurred in these conclusions.   1. The thing sued for, which is demanded in specie, must have come to the hands of the executor himself, and be detained by him to justify an action of *detinue* against him; and the question is asked, "If the thing be destroyed, so that it never has been, and never can be in the possession of the executor, why should he be chargeable with the re-delivery of it, either personally, or as executor?   In such case the action for money had and received, according to the case of Hambly v. Trott, 1 Cowp. 377, lies against the executor to recover the value.   And it is most probable that *trover* also lies under the equity of our statute, which is an enlargement

of the statute 4 Edw. 3 ch. 7, *de bonis asportatis.*" 3. That in an action of *detinue* against an executor, it is absolutely necessary to show that the testator had possession of the property before his death. 3. That although an executor or administrator, is chargeable *as such*, where he has succeeded to the possession of a chattel which the testator, or intestate enjoyed up to the time of his death, yet one having a superior legal title, may at his election maintain an action of *detinue*, charging him in his representative or individual capacity. [See also, 3 Com. Dig. 364, D; 1 Hayw. R. 398; 3 Stewt. R. 221; Mart. R. (N. C.) 42, 77.]

The remark in Sims v. Canfield, Ex'r, 2 Ala. R. 555, that detinue "could not be sustained against an executor or administrator, as such, although the possession might·be cast on him in his representative capacity," is most clearly a *dictum*, the correctness of which is wholly immaterial, in the decision of any point which arose or was considered in that case. It might have been stricken out without marring the opinion, and the analogy would have been quite as striking, which the court there drew between a bill in equity to redeem a chattel mortgaged, and an action of *detinue* by the mortgagor, with the view of showing that the statute of limitations which barred the latter, applied in like manner to the former. This *dictum* cannot restrict our inquiries, and we must consider the question presented as if it were *res integra.*

In the case at bar, the evidence recited in the bill of exceptions shows, that the plaintiff proved a right of property in himself, and the detention of the slaves by the defendants; and that the latter gave evidence to show the property was in their testator. It cannot be inferred from this recital of the evidence, that the testator was in possession of the slaves at the time of his death, or that his title was paramount to the plaintiff's. There is no rule of construction applied to bills of exception, which authorizes us thus to extend the scope of the defendant's evidence. But if the language were so doubtful as to make it necessary to employ any principle of interpretation, intendments should be indulged most strongly against the party excepting, and in favor of the ruling of the primary court. According to the Virginia cases, which rest upon authorities numerous and uniform, it was an essen-

tial element in the plaintiff's case, to entitle him to a judg-
ment *de bonis testatoris*, to show not only the defendant's
possession, but the possession of their testator also ; and a
failure of proof upon this point, was fatal to his right to re-
cover against them in their representative character.   Thus
far at least these cases, we think, lay down the law correctly;
and if there was no proof of the testator's possession, and the
pleadings were properly framed, we can conceive of no objec-
tion to the charge of the court.   The practice which too
extensively prevails, of setting out records and other writings
*in extenso;* and sometimes of reciting at large all the oral tes-
timony, is productive of no benefit to either party ; while it
makes the case more difficult to be understood, imposes ad-
ditional labor upon the appellate court, and adds to the cost
which must be paid by the one party or the other.   Yet
where a charge to the jury depends upon the evidence which
was adduced, and is proper or otherwise according to the
proof, the bill of exceptions should recite so much of the evi-
dence as shows the error of the charge, in order to authorize
a reversal of the judgment.

But the declaration is not so framed as to entitle the plain-
tiff to a judgment against the defendants as executors.   It
merely charges them upon their own possession and deten-
tion, without alledging any thing in respect to the testator's
right of property, or possession.   The plea of *"non detinet"*
merely denied the allegations of the declaration, viz : the
right of property in the plaintiff, and the detention by the de-
fendants.   To these points the bill of exceptions shows that
the plaintiff offered evidence, and if it was satisfactory to es-
tablish them, he was, under his declaration, entitled to a ver-
dict ; whether upon this verdict, he would be entitled to any
judgment, we need not inquire ; yet we think it clearly in-
ferrable from what has been said, that the defendants could
not be charged in their representative character.   Where the
defendant pleads the general issue, he admits for the purposes
of the trial, that the declaration discloses a good cause of ac-
tion, and when, upon this state of the pleadings, the plaintiff
proves what he has undertaken to do, he is entitled to a ver-
dict, although the court may afterwards arrest the judgment
for the defectiveness of the declaration.

We have not failed to observe in the record, that the defendants demurred to the declaration, and their demurrer was overruled previous to pleading the general issue, but in the posture in which the case comes before us, we are not permitted to revise the judgment on demurrer. What we have said will indicate to the parties the proper course of proceeding—it remains but to add, the judgment is reversed and the cause remanded.