## STRONG'S EX'RS *vs.* BREWER.

1. The mark of a party to an instrument, like his hand-writing, may be proved by a witness, who is sufficiently acquainted with it, as to be able to testify that he believes it to be his.

2. J. S. executed to W. S. a deed of gift of all his property, both real and personal, and W. S., at the same time, executed to J. S. a bond, conditioned that he would let him retain possession of the property during his life and the life of his wife, or until he should think proper to make a division of said property among his children. J. S., subsequently, whilst living in the State of Missouri, made a deed of gift of a portion of the property, consisting of slaves, to one of his daughters and her husband, who at the same time executed a bond, binding themselves to hire said slaves to him during his life and the life of his wife. *Held*—

  1. That the deed of gift from J. S. to W. S., and the bond from W. S. to J. S., constitute parts of one and the same transaction, and must be construed together in ascertaining the intention of the parties.

  2. That thus construed, it is clear, that J. S. intended to reserve to himself a life estate in the property, with power to defeat the title of W. S., at any time, by a division of it among his children.

  3. That there is no such repugnance between the deed, and the power reserved in the condition of the bond, as will render the condition void, and vest the title to the property absolutely in W. S.

  4. That the power reserved to J. S., there being no mode pointed out for its execution, could be executed by deceased, with a stipulation that his donee should allow him to retain the possession during his life.

  5. That an absolute sale of the property to W. S., made subsequently to

the execution of the deed by J. S., to his daughter and her husband, could not defeat their rights, although such sale was founded on valuable consideration.

3. The issue of a female slave, born during the continuance of a life estate, belong to the remainder-man, upon its termination.

4. The declarations of a donor, made subsequently to the execution of the deed of gift, are not admissible to prove it fraudulent.

Error to the Circuit Court of Fayette. Tried before the Hon. Geo. Goldthwaite.

THE facts of this case appear sufficiently in the opinion of the court.

J. L. MARTIN, for the plaintiffs in error—cited and relied on the following authorities for a reversal of the judgment: Brewer v. Strong's Ex'rs., 10 Ala. 961; Scott v. Baber, 13 Ala, 182; Paysant v. Ware & Barringer, 1 Ala. 161.

PECK, for the defendant.

1. The objection does not go the sufficiency of the proof to authorise the paper to be read to the jury, but, only to the mode of proving it. If the witness was acquainted with the character of the party's mark, from having often seen him make it, why not as well speak of it, as of a name? The mark of one, who is unable to write his name, is often as easily recognised as many signatures. The evidence, therefore, was not incompetent; the credit to be given to it was for the jury.

2. The second and third exceptions may well be considered together, as both refer to the declarations of Johnson Strong, offered to be proved by the plaintiff in error, and excluded by the Court. These declarations are alleged to have been made, after the execution both of the deed of 1812 and 1818, and were offered to prejudice the recovery of the defendant in error. They were not made in the presence of the defendant in error, nor was it proved that he knew they had been made. They were therefore, wholly incompetent to defeat the title of the defendant in error.—Julian et al v. Reynolds, et al. 8 Ala. 680, 684; 1 Greenl. Ev., § 190; Roberson, adm'r. v. Devone, 2 Haywood, 154.

3. The remaining objections arise on the charges given to the

jury by the court, and asked to be given, and refused. These objections will be answered in the order in which they appear in the bill of exceptions; and first, the first charge relates to the construction given by the court to the deed of gift of Johnson Strong, made to the testator of the plaintiffs in error, in the year 1812, and the contemporaneous bond, executed by said testator to the said Johnson Strong, and to the deed of gift, made by the said Johnson Strong to the defendant in error and his wife, made in Missouri, in the year 1818, and the agreement made at same time by defendant and his wife, to hire the slaves mentioned in the latter deed of gift to Johnson Strong, during the life of the donor and his wife. The court, in substance, charged the jury, that the first deed of gift and bond were to be construed as one transaction, and that by the bond, a right was reserved to Johnson Strong to defeat the estate of the testator of the plaintiffs in error under the deed of gift, by making a division of the property among his children, and that the deed of gift by Johnson Strong to defendant in error and his wife, with the contemporaneous agreement or covenant to hire the slaves was, as far as it went, considered with the other deeds made at the same time to his other children, a division or the property, and *pro tanto*, defeated the estate of the testator of the plaintiff in error, in the property so divided. The correctness of this charge is sustained by the following cases.—Seawell v. Henry, 9 Ala. 26, 32; Scott v. Baber, 13 Ala. 182, and Elliott v. McClelland, at this term. If this charge was properly given, then the three succeeding charges asked were rightfully refused.

4. The next charge involves the question, if it can be said to be a question, who is entitled to the issue, the tenant for life, or the remainder-man. The plaintiffs in error requested the court to charge the jury, that the issue belonged to the tenant for life, which the court refused to do. The following authorities show that the court was right.—1 Haywood, 234; 3 Hawks Rep. 456; Wilks' Adm'r. v. Geer, et al. 14 Ala. 437. The court also properly charged the jury, that the defendant in error had no right of action to recover the issue, during the life of the donee, who was also tenant for life.

5. The last charge asked was properly denied. I was unable, on the trial in the court below, to see the drift of this charge, and I confess I am blind now, as I was then. It is perfectly clear

that Johnson Strong had a right to the possession and use of the slaves, during his life, and having this right, he might well sell it; he could not however, sell more, and having sold it to the testator of the plaintiffs in error, it is equally clear, he could not be guilty of an unlawful detainer, during the life of the said Johnson Strong, but that, after the death of the said Johnson Strong, they may be charged as executors. This is the very question decided in this case, when it was here before.—Brewer v. Strong's Ex'rs. 10 Ala. 961.

DARGAN, C. J.—This was an action of detinue, brought by the defendant against the plaintiffs in error, to recover five slaves. Pleas *non detinet*, and statute of limitations. On the trial, a bill of exceptions was taken, which presents the following facts. In the year 1812, Johnson Strong made a deed of gift to his son William Strong, the defendant's testator, of all his property, both real and personal, and at the same time took a bond from William in the penalty of six thousand dollars, conditioned that William Strong should let Johnson Strong, the donor, have the possession of the property, during his life and the life of his wife, or until Johnson Strong, the donor, should think proper to make a division of said property amongst his other legatees. The deed from Johnson Strong conveyed to William, together with seven other negroes, a negro woman named Poll, and her child, and it was shown that the slaves sued for were the children of Poll, and Nelly, who was her daughter. After the execution of this deed and bond, Johnson Strong removed to Missouri, and whilst there, in the year 1818, executed to Isaac Brewer and his wife, who was the daughter of Johnson Strong, a deed of gift, by which he conveyed to them the negro woman Poll and her two children, Gabriel and Hannah, and took from them an obligation, purporting to be signed by Isaac Brewer, and Elizabeth, his wife, by which they bound themselves to hire said slaves to Johnson Strong, during the life of himself and wife. This obligation was signed by Elizabeth Brewer, who could write, but it purported to be signed by Isaac Brewer, by making his mark in the shape of a cross, his name being written at length by some other person. To prove the execution of this obligation, the plaintiff introduced his son as a witness, who testified to the hand-writing of his mother, and also stated that he knew the

mark of his father, and the mark attached to the foot of the instrument, he believed to be his father's mark. The defendant objected to this mode of proving the instrument, on the ground that a mark, differing from an ordinary signature, could not be proved in the manner proposed, but the objection was overruled by the court. The general rule, which admits of proof of the hand-writing of a party, is founded on the reason, that in every person's manner of writing there is a peculiar prevailing character, which distinguishes it from the hand-writing of every other person, and therefore, that one, who knows the hand-writing of the party, is competent to testify to it. This kind of evidence too, like all other probable evidence, admits of every degree, from the lowest presumption to the highest moral certainty.— 1. Phil. Ev., 484. The degree of weight to be attached to it depends not only upon the character of the witness, but also upon the opportunity he has had of acquiring a knowledge of the party's hand-writing. It may be more difficult to acquire a knowledge of a simple mark, by which an illiterate man executes a deed, than the knowledge of the hand-writing of one, who can write his name in full, but we cannot perceive why it may not be done. In some instances, the peculiarity may be as strong as that which marks the characters of one who can write, and in other instances, not perhaps so great; yet in all, we apprehend, would be found something distinct and peculiar, which would enable one, who had frequently seen the party make his mark, to know it. We can, therefore, see no reason why one, who has frequently seen a party make his mark to deeds or other writings, and who can testify that he believes that he knows it, may not be permitted to prove the execution of a deed thus subscribed. We are somewhat surprised that we can find but one case in which this question arose, and that is the case of George v. Surry, 1 Mood. and Malk. 516, referred to in Cowen and Hill's notes to Phil. Ev., vol. 3, 1323, in which it was held, that a witness who had seen the party, whose signature he was called to prove, make her mark, might be permitted to testify to the execution of the instrument. We do not think the court erred in admitting this evidence. It could not be rejected as illegal, but its weight was for the jury. The evidence also showed, that after the execution of the deed in 1818, by which Johnson Strong, conveyed the slave Poll and her children to the plaintiff, he re-

moved to Alabama, and lived for several years with his son William, to whom the deed in 1812 was executed; and that in the year 1833, they had a settlement of accounts for money advanced by William Strong in removing him, Johnson Strong, and his family, from Missouri. Upon this settlement, it was ascertained that Johnson Strong, the father, was indebted to William, his son, in the sum of seven hundred dollars, and in payment thereof he executed to him an absolute bill of sale to the slave Gabriel, who is one of the slaves sued for. In the year 1841, Johnson Strong, alleging that he was too old to have the care of property, had a public sale, at which William purchased the slaves John and Nelly, and her child Mary, and took them into his possession, which he retained until his death. It was also shown that William Strong, the son, died before Johnson Strong, and that upon the death of William, the slaves came into the possession of the defendants as his executors. It also appeared that the slave James was a son of Nelly, and was born after the death of William Strong, and that Johnson Strong died in the year 1849. Upon this proof, the court charged the jury that the deed, executed by Johnson Strong in the year 1812, and the bond executed by William to him at the same time, constituted but one transaction, and that under the terms of the bond, executed by William Strong, Johnson Strong had the right to defeat the estate conveyed to William, by making a division of the property among the children of Johnson Strong, and that the execution of the deed in 1818 to Isaac Brewer and wife, and the contemporaneous covenant executed by them, was, so far as it went, a division of the property, and *pro tanto*, defeated the right of William Strong under the deed of 1812. The defendants requested the court to charge the jury that the bond of William Strong to his father deprived him of the right to retain possession of the property, after he had made a division of it amongst his children, and also that it was void, as being repugnant to the estate conveyed by the deed of Johnson Strong to William, which charges the court refused to give. The defendants also requested the court to charge the jury that the plaintiff under the deed of 1818 took no right to the increase of Poll, which was also refused. The court was further requested to charge the jury that if William Strong died before Johnson Strong, his father, then William in his life time was not guilty of an unlawful

detainer, and consequently the defendants were not chargeable as his executors, which was also refused, and the defendants excepted to the charge given, and also to the refusal of the court to give the instructions requested.

There can be no doubt but that the deed of 1812, executed by Johnson Strong to his son William, and the bond, executed at the same time by William to his father, must be construed together as parts of the same contract. In the case of Jackson, *ex dem.* of Watson v. McKinney, 3 Wend. 233, a mother executed a deed of a house and lot to her two sons in fee, and took from one an instrument in writing of the same date, declaring that the intention of the parties was that the grantor should hold and enjoy the property during her natural life—it was held that both instruments were parts of the same contract, and thus construed, the grantor had an estate for life in the premises. So in the case of Stephens v. Baird, 9 Cowen, 274, it is said that several instruments in writing, passing between the same parties at the same time, in reference to the same subject matter, must be taken as parts of the same transaction, and make but one agreement.—See, also, Glassel v. Chapman, 13 Ala. 50. In the case of Doe on the demise of Holman v. Crane et al., we said that it had so often been decided, that it is now the settled rule, that several instruments in writing, executed at the same time, between the same parties, in reference to the same subject matter, constitute but one agreement, and from all of them the intention of the parties must be gathered, in giving effect to the contract. Construing then the deed and the bond of 1812, executed by Johnson and William Strong, as one contract, what was the intention of the parties? It is manifest that Johnson Strong, the father, intended to reserve a life estate to himself in the property, with a power to divide it amongst his children, as he might see proper. This division he had the right at any time to make, and he could well designate when his children should come into the actual possession of such part as he might see proper to allot to each. Nor is there such repugnance between the powers, reserved to the father in the condition of the bond, and the deed, executed by him to his son William, as will render the condition of the bond void, and vest the title to the property, conveyed by the deed of 1812, absolutely and unconditionally in him. By the

deed the property is conveyed to William Strong; by the bond, the father, Johnson Strong, reserves a life estate, with the power of disposing of the property amongst his children only. If he failed to execute that power, upon his death, the property would pass absolutely and unconditionally to William Strong by the deed; but the execution of the power, reserved to the father, would defeat the title of William. This was the intention of the parties, and we can give full effect to it, without destroying either instrument. Indeed they both constitute a contract, that the parties were capable of making, and, construed together, there is no inconsistency or repugnancy in the agreement. As Johnson Strong then had a life estate in the property, with power to divide it amongst his children, as he might see fit, he could execute that power by deed in his life-time, as no specific mode was pointed out in the instrument creating the power, in which it should be executed; and he could stipulate that his donee under the power should suffer him to retain possession of the property during his, the donor's, life. The deed, therefore, to Isaac Brewer and wife, executed in 1818, and their covenant, which amounts to an agreement that Johnson Strong should retain the possession of the property during the life of himself and his wife, gave the slaves named in the deed to Brewer, with the reservation of a life estate in the donor, and after his death, Brewer became entitled to the property. This being the condition of his rights, they were not defeated, under the facts of this case, by the subsequent sale of the slaves by Johnson Strong, the donor, to William Strong, even if such a sale was upon a valuable consideration.—See Lyde et al. v. Taylor and others, decided at the present term, and cases there cited.

It is the rule that children of a female slave, born during the continuance of a life estate, belong to the remainder-man, upon the determination of the estate for life.—Wilks, adm. v. Greer, 14 Ala. 437, and cases there cited. There was no error, therefore, in the court refusing to give the charge, that the slaves born after the execution of the deed, in the year 1818, could not be recovered.

The court also properly excluded the declarations of Johnson Strong, made after the execution of the deed, tending to prove it was fraudulent as against his creditors. This has been
46

so often ruled by this court, that it would serve no purpose to refer to the cases.

When this case was before this court at a previous term, it was decided that the action of detinue could be maintained against the defendants in their representative character, although the cause of action did not accrue until after the death of the testator, upon proof that the testator was possessed of the slaves before his death, and that they came to the possession of the defendants as executors.—10 Ala. 961.

We perceive no error in the record, and the judgment must be affirmed.