## BARNES & BARNES vs. MOBLEY.

1. When the court below charges the jury, that, if they believe all the proof, the plaintiff is not entitled to recover, the plaintiff, wishing to revise the charge in the Appellate Court, must set out in the bill of exceptions all the evidence upon which it was predicated.

2. When the defendant in trover fails to give any account of the manner in which he acquired possession of the slave in controversy, he will be presumed, in the absence of all rebutting proof, to hold from or under the person who is shown to have had the possession for several years next before the defendant acquired it.

3. The declarations of one who is in possession of personal property, in disparagement of his own title, or repudiating title in himself, are competent evi-

Barnes and Barnes v, Mobley.

dence against himself, or against a subsequent purchaser from him, or one claiming to hold under him.

4. The declaration of one in possession of a slave, *made at the time of hiring* her to the witness, "that the slave belonged to the plaintiffs, who were minors and orphans," is admissible evidence for the plaintiffs, in an action of trover subsequently instituted by them for her conversion against a third person, as showing that he was but the plaintiffs' bailee, and held the slave in that capacity, in subordination to their title, and not adversely to them.

ERROR to the Circuit Court of Chambers.

Tried before the Hon. ROBERT DOUGHERTY.

This was an action of trover by the plaintiffs against the defendant, to recover damages for the conversion of a negro woman slave, alleged to have been the property of the plaintiffs. Plea, not guilty, with leave to give evidence of any matter which would be legally received under any special plea in bar; verdict and judgment for the defendant.

On the trial, a bill of exceptions was sealed, from which it appears, that the plaintiffs introduced proof tending to show, that their father (John Barnes) intermarried with their mother, who was the daughter of one Jethro Mobley, in the year 1823, which marriage was solemnized in the State of Georgia, and that immediately upon said marriage, said Jethro Mobley gave the negro slave in controversy to his said daughter; that said slave continued in the possession of the plaintiffs' father until the death of their mother, which happened in Georgia, in 1830; that their father, for the first two or three years next succeeding his marriage, resided near his father-in-law, Mobley, but afterwards removed to Merriwether county, Georgia, where he remained in possession of said slave until his wife's death. The plaintiffs further proved, that after the death of Mrs. Barnes in 1830, her father, Jethro Mobley, came from Butts county, Georgia, where he resided, to Merriwether, and proposed to the plaintiffs' father, that, if the latter would suffer him to take the plaintiffs, who were then of tender years, and the bed of their mother and the negro woman, he would raise and educate the plaintiffs, and keep the negro woman and her increase for them, and that when he died, he would give to the plaintiffs the share of his estate which would have gone to their deceased mother; that this proposition was assented to by the father of the plaintiffs,

16

and the plaintiffs and said property were thereupon delivered to said Jethro Mobley, their grandfather, who took them to the county of his residence; that after this agreement, the plaintiffs' father never had the possession of said slave, and never exercised any acts of ownership over her subsequently.

This agreement was afterwards repeated to several witnesses by said Mobley, while he had possession of the plaintiffs and said slave; and it was proved that said Mobley hired out said slave two years, for the benefit of the plaintiffs.

It appears, also, that the plaintiffs and the negro woman remained in said Mobley's possession from 1830 to 1834, or 1835; and that, in the latter part of 1835, or first of the year 1836, the slave was proved to have come into the possession of the defendant, who exercised acts of ownership over her, working her in the field with his other hands, and controlling her from the date above until 1844, or 1845, at which time said defendant sold her to one James Barr. It was conceded that, at the time of the sale to Barr, the plaintiffs had not attained the age of majority.

Plaintiffs then proved the value of the slave to have been from $600 to $700, while she was under defendant's control. It was shown that Jethro Mobley died in 1848, or 1849; and the plaintiffs offered to prove that, while said Mobley had the plaintiffs and the slave in his possession, viz: in 1834 or 1835, he stated to the witness, who was hiring the slave from him, "that she belonged to the plaintiffs, who were minors and orphans, and that he was hiring her out for their benefit." This declaration was objected to by the defendant, and the court excluded so much as related to the title to said slave, and the plaintiffs excepted.

This being all the proof, except the statute of frauds of the State of Georgia, the circuit judge charged the jury: that, if they believed the whole of the testimony, they should find for the defendant. To this charge the plaintiffs also excepted, and they here assign the matter of these two exceptions for error.

BARNES & ALLISON, for plaintiffs in error:

1. The bill of exceptions shows, that the father and mother of the plaintiffs intermarried in the year 1823; and that im-

mediately after the marriage Jethro Mobley, the father of plaintiffs' mother, gave her the slave in controversy. This was an absolute gift to her. Merriweather v. Eames, 17 Ala. 330; Olds v. Powell, 7 Ala. 650; Hill, *et al.* v. Duke, 6 Ala. 259.

2. Marriage operates as an absolute gift to the husband, of the personal chattels of the wife in her possession at the time of the marriage, and what may be reduced into possession during the marriage. Clancy on Rights, 152; Hooper v. McWhorter, 18 Ala. 279; Chambers v. Perry, 17 Ala. 726; Oneal v. Teague, 8 Ala. 345; McGehee v. Toland, 8 Porter 36; Bibb v. McKinley, 9 Porter 636.

3. The declarations of Jethro Mobley, made while he had possession of the slave, were admissible evidence, as tending to show the character and extent of his possession. McBride and wife v. Thompson, 8 Ala. 650; Thompson v. Mawhinney, 17 Ala. 362; Clealand v. Huey, *et al.*, 18 Ala. 343; Brazier & Co. v. Burt, 18 Ala. 201; Perry v. Graham, 18 Ala. 822; 17 Ala. 10; ib. 216; ib. 314; ib. 428; 10 ib. 430.

4. The terms of the agreement, the situation of the parties, the motive that led to it, the object to be attained by it, and the subsequent acts and declarations of Jethro Mobley, as shown by the bill of exceptions, show that the parties intended the title of the slave to vest in the plaintiffs, and that Jethro Mobley must have believed that plaintiffs' father believed, at the time he delivered the slave to him, that the title to the slave vested in plaintiffs, and that said Jethro Mobley had no interest in her, but only received her as plaintiffs' bailee; and this intention is the law of the case, and must be enforced. Chitty on Contracts, 74; Watts v. Sheppard, 2 Ala. 425; Strong v. Gregory, 19 Ala. 146. The delivery of the slave to Mobley, and the abandonment of possession and dominion by their father, vested the title to the slave in plaintiffs. McCutcheon v. McCutcheon, 9 Porter 650; 2 Ala. 669.

5. The evidence of the witness offered, and ruled out by the court, as shown by the bill of exceptions, was admissible, for the purpose of showing admissions made by Jethro Mobley, against his interest, which bound him and the defendant. 1 Greenleaf on Evidence, § 190; 4 Johns. Rep. 230; Nelson v. Iverson, 17 Ala. 216; Robertson v. Smith, 18 Ala. 220;

Head v. Shaver, 9 Ala. 791; McBride and wife v. Thompson, 8 Ala. 650.

6. If Jethro Mobley had any interest in or title to the slave, it was limited and special, and could not extend beyond the time when the plaintiffs became of age; and if he sold, or permitted the defendant to sell the slave, this was a conversion, and entitled the plaintiffs to sue for it. Tucker and wife v. McGehee, 18 Ala. 99; Whitlock v. Heard, 13 Ala. 776; Lee v. Matthews, 10 Ala. 682; Abercrombie v. Bradford, 16 Ala. 560; Hooks v. Smith, et al., 18 Ala. 338; 1 Humphreys' R. 199.

RICE & BAUGH, contra:

1. A material part of the evidence, to-wit: the statute of frauds of Georgia, is not made a part of the bill of exceptions, although the bill of exceptions shows that this statute was read in evidence, and that the transactions under which the plaintiffs claim title occurred in Georgia. In the absence of that statute from the bill of exceptions, this court cannot say the court below erred in charging the jury, that if they believed all the testimony, they must find for the defendant. If necessary to sustain the charge, this court would intend that the statute of frauds of Georgia contained provisions which justified the charge of the court. Jones v. Stewart, 19 Ala. 701; Rhodes v. Sherrod, 9 Ala. 63.

2. The only other exception arises out of the offer of the testimony of Dr. C. C. Forbes, by the plaintiffs. This testimony of Forbes was offered as a whole, and as part of that testimony is clearly inadmissible and irrelevant, and mere hearsay, the court would not have committed an error if it had rejected the whole, Smith v. Zaner, 4 Ala. 99; Melton v. Troutman, 15 Ala. 535. But the court made a decision more favorable to plaintiff than he was entitled to by law. The court "excluded only what witness said about titles." There is certainly no error in the ruling of the court. McBride v. Thompson, 8 Ala. 650.

3. In the action of trover, the plaintiff cannot recover where the evidence shows an outstanding title in a third person.

4. The evidence does show an outstanding title in John Barnes, the father of plaintiffs, or in Jethro Mobley, their grandfather.

Immediately after the marriage of said John Barnes, his father-in-law (Jethro Mobley) gave the negro girl to the wife of said John Barnes. This gift vested the title in John Barnes.

ᐧThe transaction which occurred after the death of the wife of said John Barnes, did not destroy or divest his title. It was not a gift to his children. Durett v. Sewell, 2 Ala. 669. That transaction was, at most, evidence of an intention to give. Sims v. Sims, 2 Ala.

That transaction is as follows: A short time after the death of the mother of the plaintiffs, the said Jethro Mobley and John Barnes, in Merriweather county, Georgia, had a conversation. Jethro told John that "if he would give him (Jethro) up the plaintiffs, the bed of plaintiffs' mother, and said negro, he (Jethro) would take the plaintiffs, raise and educate them, and keep the said negro and her increase for them," "and that when he died he would, in addition, give them their deceased mother's portion of his estate." Thereupon, the said John delivered up to said Jethro the negro, the bed and the plaintiffs; the said Jethro being the grandfather of plaintiffs.

Now, if it were conceded that this was a valid contract between Jethro and John, it was a contract by which Jethro acquired the right to the possession of said slave until he would raise and educate the plaintiffs; that is, until they, or one of them, arrived at the age of twenty-one years. A child cannot be considered as raised until it arrives at lawful age.

The defendant has never had possession or control of the slave since he sold the slave to Barr, in 1844 or 1845, and it was conceded on the trial that the plaintiffs, at the time of that sale, were not twenty-one years old.

It is, therefore, clear, that if the sale by defendant to Barr was a conversion, the plaintiffs cannot maintain trover for it, because they had no right at that time to the immediate possession of the slave. 1 Chitty's Pl. 152, 148, 149, 150.

The plaintiffs might possibly have maintained case, if any damage to their reversionary interest was done by that sale, but it is clear they cannot maintain trover, because they then had no right to the immediate possession.

If the sale by defendant to Barr was a conversion, the said Jethro Mobley might have maintained trover, unless he had

hired out the slave for a term then unexpired. It was not shown that defendant acquired the possession unlawfully.

The evidence presented the following obstacles to a recovery, to-wit: 1. At the time of the alleged conversion, (to-wit, the sale by defendant to Barr, in 1844 or 1845,) the plaintiffs did not have "a complete property, either general or special" in the slave. 1 Chitty's Pl. 148. 2. There is no proof of conversion. Hall v. Robinson, 2 Comstock's R. 293. 3. At the time of said alleged conversion, the plaintiffs did not have the actual possession, nor the right to the immediate possession. 1 Chitty's Pl. 148. 4. There was an outstanding title to the property, and to the immediate possession of it; which outstanding title continued at least until plaintiffs were raised and educated, for until then Jethro Mobley had the right to possess and control the slave.

CHILTON, J.—It is impossible for this court to say, that the Circuit Court erred in charging the jury, that, if they believed all the proof, the plaintiff was not entitled to recover; for the simple reason that all the proof is not set out in the bill of exceptions. It is shown that the statute of frauds of the State of Georgia was read in evidence, and constituted a portion of the proof on which the charge of the court was based.

We cannot judicially know, but that the statute referred to may fully justify the court in the charge, as the gift was made in that state, and the parties resided there when the plaintiffs' alleged title accrued. It is indispensable, when the party desires to review such charge as this, that the record should state all the proof upon which it was predicated, otherwise this court cannot say the court below acted contrary to law, as the data for such conclusion is not furnished by the bill of exceptions. It has been several times decided, that when the legality of the charge depends upon the proof, the party insisting upon its incorrectness must affirmatively show the error, by setting out the proof in the bill of exceptions. Brewer v. Strong, 10 Ala. 961; Greene v. Tims, 16 Ala. 742; Knapp v. McBride, 7 ib. 20; Jones v. Stewart, 19 Ala. 701.

2. We think the court misconstrued the application of the rule, that the declarations of a party in possession, explana-

tory of such possession as showing the character in which he held, are admissible only for that purpose, and cannot be allowed as proof of title, as settled in the case of McBride and wife v. Thompson, 8 Ala. 650, and asserted by several subsequent decisions.

The bill of exceptions does not distinctly state it, but there was some evidence afforded by the proximity of the possession of the defendant to that of Jethro Mobley, that the defendant derived his title, if any he had, from Mobley, or held in subordination to him. At all events, Mobley is proved to have been in possession of the slave for several years, and she goes from him to the defendant, who fails to give any account as to the manner in which he acquired the possession. Such being the case, the presumption, in the absence of all rebutting proof, is, that he acquired the possession from Mobley, the person proved to have had the possession next before the defendant acquired it. Holding, then, either as a purchaser from, or in subordination to the claim of Mobley, it is obvious that the declarations of the latter in disparagement of his own title, or repudiating title in himself, were competent evidence. 1 Greenl. Ev. § 190. They would have been good as against Jethro Mobley, and are equally good as against any one subsequently deriving title, or claiming to hold under him. Nelson v. Iverson, 17 Ala. pp. 221–2.

But we think the whole proof offered by Forbes admissible upon another ground. It must be borne in mind, that this is not the case of a party offering the declarations of himself or those under whom he claims, to sustain his title; but the declarations of a third person, found in the possession of the slave, and made while hiring her to the witness, the same being explanatory of, and probably forming an element in the contract of hiring, and tending to establish the part execution of a trust which had been conferred upon Jethro Mobley by the plaintiffs' father; namely, that he would take care of the slave for the plaintiffs, &c. The declaration of Mobley, at the time of hiring, "that the slave belonged to the plaintiffs, who were minors and orphans," showed that he was but the plaintiffs' bailee, and hired her in that capacity, and did not hold adversely, but in subordination to their title.

We repeat, that such declaration was unquestionably competent to show, that Mobley had no title, and to rebut any presumption or inference that the defendant derived any through him, if he held under him. See Oden v. Stubblefield, 4 Ala. 40; and cases in this court cited in 17 Ala. 222; 18 ib. 201, 343, 822.

We regret that the statute of frauds of the State of Georgia is not before us, so that we might settle the law upon the merits of this case, and thus save further litigation; but, as it is not, we forbear to express any opinion upon the law arising upon the partial statement of facts contained in the bill of exceptions.

As to the right of plaintiffs to sue by reason of the conversion, notwithstanding they may not have been entitled to the possession of the slave at the time, see Tucker v. Magee, 18 Ala. 101.

For the error above noticed, the judgment must be reversed, and the cause remanded.