Drake and Wife v. Glover.

---

## DRAKE AND WIFE *vs.* GLOVER.

[DETINUE FOR SLAVE.]

1. *Judicial notice not taken of foreign statutes.*—A State court cannot take judicial notice of the statute laws of another State ; consequently, the appellate court will not look into the Civil Code of Louisiana, when not properly brought before it, to ascertain what the law of that State is.

2. *Conflict of laws as to transfers of personal property.*—Although the removal of husband and wife to this State, with their property, does not affect their respective rights to the wife's property, as secured to her by the laws of the State in which it was acquired ; yet the validity of a subsequent transfer of such property must be determined by the laws of this State.

3. *Conveyance of wife's separate estate under statute.*—The provisions of the Code, (§ 1984,) authorizing the transfer of the wife's separate estate by deed of husband and wife jointly, attested by two witnesses, do not apply to personal property in which the wife acquired a separate estate by the laws of another State, where she and her husband were then domiciled, and which was afterwards brought with them to this State on changing their domicile.

4. *Estoppel en pais against feme covert.*—If a married woman is present at an unauthorized sale of her separate personal property, by one professing to act as her trustee, her failure to object to the sale will estop her from afterwards questioning its validity ; but, if she is not actually present at the sale, the mere fact that she has knowledge of it, and fails to object, does not operate an estoppel against her ; nor will she be estopped by her failure to object to an unauthorized sale by her husband, in her presence, unless her silence was fraudulent, and not the result of marital restraint.

APPEAL from the Circuit Court of Dallas.

Tried before the Hon. ROBERT DOUGHERTY.

THIS action was brought by Benjamin Glover, against Mrs. Mary L. Drake and her husband, Reuben Drake, to

recover damages for the conversion of a slave named Carvis, which Mrs. Drake claimed as a part of her separate estate, while the plaintiff claimed under a purchase at execution sale against one Andrew J. Campbell, who derived title through a purchase from Thomas G. Rainer, as trustee of Mrs. Drake. Mrs. Drake, who held a separate estate in her distributive share of her father's estate under the laws of Louisiana, bought the slave at execution sale against her husband, while they were there domiciled; and afterwards, in May, 1853, she and her husband removed to this State, bringing the slave with them. The sheriff's sale, under the execution against Campbell, was forbidden by Mrs. Drake, through an agent, and public notice of her claim was given; but the sheriff, having been indemnified by the plaintiff in execution, proceeded with the sale. The slave was in Campbell's possession at the time of the levy, and the facts connected with his purchase are thus stated in the bill of exceptions:

"The plaintiff introduced Thomas G. Rainer as a witness, who testified, that he was called upon, during the year 1854, by one James H. Campbell and said Reuben Drake, who stated to him, that Mrs. Drake was about to institute a suit in chancery for the protection of her paraphernal (or separate) property, and requested him to act as trustee, or next friend of Mrs. Drake, in the prosecution of said suit; that he consented to act in that capacity, upon the express condition that he was to incur no responsibility, and be put to no trouble or expense, and that his connection with said suit and Mrs. Drake must have relation entirely to the prosecution of said suit; that said Reuben Drake and one Andrew J. Campbell had entered into a contract for the sale and purchase of two negro boys, named Carvis and Jack, represented by them to be a part of Mrs. Drake's separate property; that he was then requested by said Drake and Campbell to sign a bill of sale for said slaves, conveying them, as trustee of Mrs. Drake, to said Campbell, and that he did so." (The bill of sale, which is here set out in the bill of exceptions, expresses the consideration of the sale to be

$2,800, and contains a warranty of title on the part of the trustee as such.)

"It was agreed that, at the time of the execution of said bill of sale, said Campbell gave his note for $2,800 for said negroes, and the same was placed in the hands of James H. Campbell, as collateral security for the payment of a note given to him by said Drake, for professional services in attending to suits for Mrs. Drake. Mrs. Drake was not present, nor had witness ever seen her or conversed with her up to the time of this transaction, and had no other authority from her to sell and convey said slaves than the request of said Campbell and Drake. It was understood and agreed, that said slaves might be redeemed; and it was proved, that Mrs. Drake sent blankets to them at one time, and clothes at another time, while they were in Campbell's possession. All this took place in Cahaba, before witness ever saw or conversed with Mrs. Drake on the subject. Several days after this transaction occurred, witness called at the defendants' house, at Orrville in said county, in company with said A. J. Campbell, when Mrs. Drake signed a written request to, and appointment of witness, to act as her trustee, or next friend, to carry on a chancery suit in this State; and at the same time it was said, that there was no doubt the chancery court would confirm the appointment. After Mrs. Drake signed said request and appointment, said Reuben Drake called up the two boys Jack and Carvis, and delivered them to said Campbell; but witness could not say whether Mrs. Drake was then near enough to see and hear what was going on. The delivery was made in the yard, in front of the house, and Mrs. Drake was in the piazza, or inside of the house, (witness could not say which,) nor could he say whether she could see or hear what was going on. He further testified, that said petition was never presented to the chancellor; nor was he ever appointed trustee of Mrs. Drake, except as herein above stated. There was evidence that Mrs. Drake never did request Rainer to sell said slave, nor did she ever assent to, or ratify said sale, unless her assent may be implied from the facts above set forth, with the additional

facts, that Campbell had possession of said slaves from September, 1854, until the sale by the sheriff as aforesaid, and hired out said slaves in the town of Cahaba as his own property."

Several articles of the Civil Code of Louisiana were read in evidence by each party, none of which is set out in the bill of exceptions; nor is there any agreement of counsel in reference to them.

The court charged the jury as follows:

"1. That having acquired her property under the laws of Louisiana, where she then resided, Mrs. Drake's rights, both with regard to her title to the boy Carvis, as well as her right to alienate, or sell and dispose of him, must be controlled by the laws of Louisiana.

"2. That if Rainer sold the boy Carvis, and executed the bill of sale, at the request of Reuben Drake, and without having been requested to do so by Mrs. Drake in writing; yet, if she was present, and assented to the sale, or knew of the sale, and the execution of the bill of sale, and did not object to the same,—this was a ratification of the sale, and estopped her from denying Rainer's authority to sell.

"3. That although Mrs. Drake, under the laws of Louisiana, could not sell or dispose of her slaves, being her paraphernal (or separate) property, unless in writing with the concurrence of her husband; yet, if Drake did sell the negroes, and Rainer executed the bill of sale given in evidence, and Mrs. Drake knew of the sale and execution of the bill of sale, and did not object to it,—she was bound by the sale, and estopped from denying Rainer's authority to sell."

These charges are now assigned as error.

George D. Shortridge, with whom was J. D. F. Williams, for the appellant.—1. This court will take judicial notice of the systems of jurisprudence prevailing in the different States of the Union.—Kling v. Sejour, 4 La. Ann. R. 130. The presumption that the common law prevails in a sister State only applies to those States which have the same origin with our own.—Inge v. Murphy,

10 Ala. 885. That the territory of Louisiana was ceded by France to the United States in 1803; that the laws of France and Spain, alternately, had existed there anterior to its cession; that the State of Louisiana was admitted into the confederation on terms of equality with the other States, and that a code of laws was there adopted, which was founded on the civil law, and which still continues in force,—are political and historical truths, which the court must judicially know. The Civil Code of Louisana is not to be regarded as a foreign statute, but as a complete system of laws.—Bank of La. v. Farrar, 1 La. Ann. R. 54.

2. But the articles. of the Civil Code, which were read in the court below, even if not judicially noticed, are sufficiently described and identified in the bill of exceptions, to authorize this court to refer to the volume bearing that title. It is only necessary to use such words of description, as will identify the evidence, and leave no room for fraud or mistake.—Ennis v. Smith, 14 Howard, 426; Br. Bk. Decatur v. Moseley, 19 Ala. 223; Yarbrough v. Hudson, *ib.* 653; Inge v. Murphy, 10 *ib.* 885; Gunn v. Howell, 27 *ib.* 663; 2 Leigh, 172; 2 Scammon, 9; 4 Dess. 26; 1 Cush. 42.

3. Aside from these articles of the Civil Code, the record discloses enough to sustain the proceedings in Louisiana, in reference to the succession and partition of the estate of Mrs. Drake's father, and to the judgment, execution, and sale in favor of Mrs. Drake against her husband; which proceedings cannot be collaterally impeached.— Story on Conflict of Laws, § 505; Goodrich v. Jenkins, 6 Ohio, 43; Anderson v. Anderson, 8 *ib.* 108; Hubbell v. Clannon, 13 La. 496; Brosnaham v. Turner, 16 La. 454; Phillips v. Hunter, 2 H. Bla. 410; Grant & Swift v. McLachlin, 4 Johns. 33.

4. These proceedings show, that Mrs. Drake acquired a paraphernal (or separate) estate in the slave in controversy, both from her father's estate, and by the sheriff's deed.—Darick v. Darcy, 6 Rob. 342; Bostwick v. Gasquet, 11 La. 534; 2 La. Ann. R. 930; 1 Rob. 367.

5. By the Civil Code of Louisiana, slaves are placed on a footing with realty; both being called immovables.—

Harper v. Stanbrough, 2 La. Ann. 382; 4 *ib.* 70; 3 *ib.* 637; Civil Code, art. 461. A sale of immovables must be in writing.—Roper v. Yocum, 3 Martin, 443; Morgan v. McGowan, 4 *ib.* 210; 12 Rob. 474; 1 La. Ann. 459; 1 La. 314; 6 Rob. 88.

6. The wife's right having become fixed by the laws of Louisiana, where the property was acquired, and where the parties were then domiciled, a change of domicile does not affect them.—7 B. Monroe, 140; 4 Howard, 157; Peake v. Yeldell, 17 Ala. 644; Doss v. Campbell, 19 Ala. 592.

7. The husband's admission of title in his wife; the purchaser's knowledge, at the time of his purchase, that the slave belonged to Mrs. Drake; and the notice of her claim, publicly proclaimed at the time of the sheriff's sale,—bring the case within numerous decisions of this court.—Frierson v. Frierson, 22 Ala. 549; Jennings v. Blocker, 25 Ala. 415; Miller v. Jones, 26 Ala. 247.

8. The first charge of the court is erroneous, whether the validity of the sale is to be determined by the laws of Louisiana or of Alabama, neither of which was complied with.

9. The second charge cannot be sustained. The acts supposed do not amount to a ratification of the sale, which, being void, could be confirmed by nothing short of a re-delivery or new grant.—George v. Goldsby, 23 Ala. 326; Miller v. Shackleford, 3 Dana, 289; 14 Sm. & Mar. 56; Vance v. Wells & Co., 6 Ala. 737; 9 B. Monroe, 413.

10. The legal proposition asserted by the last charge is indefensible. It is a rule of the common and civil law alike, that the wife is not bound to assert title to her separate estate, in opposition to her husband, and that her silence will not estop her.—McIntosh v. Smith, 2 La. Ann. R. 750; Palmer v. Cross, 1 Sm. & Mar. 68; U. S. Bank v. Lee, 13 Peters, 107.

WM. M. BYRD, and GEO. W. GAYLE, *contra.*—1. The court cannot take judicial notice of the Louisiana statutes which were read in evidence in the court below, and,

consequently, cannot decide upon the correctness of the charges predicated on them.—Barnes v. Mobley, 21 Ala. 232; Brewer v. Strong, 10 Ala. 962; Jones v. Stewart, 19 Ala. 701; Green v. Tims, 16 Ala. 742.

2. The judicial proceedings had in Louisiana, under which Mrs. Drake derived title to the slave, are shown by the statutes of that State to be void.

3. Although Mrs. Drake's property was acquired in Louisiana, the validity of any alienation of it must be determined by the *lex loci contractus.*—Campbell v. Doss, 19 Ala. 590. But neither the provisions of the Code, nor the woman's laws of 1848 and 1850, apply to this particular property, because it was acquired beyond the limits of the State, and before the passage of those laws.—Friend v. Oliver, 27 Ala. 532; Gerald v. McKenzie, 27 Ala. 166; Hardy v. Boaz, 29 Ala. 168. The common law, then, must apply to the case.—Jenkins v. McConico, 26 Ala. 213.

4. The legal proposition asserted in the charges, as to the doctrine of estoppel, is correct.—Steele v. Adams, 21 Ala. 534; Jenkins v. McConico, 26 Ala. 213.

WALKER, J.—The established doctrine now is, that no State court takes judicial notice of the statute laws of a sister State. They must be proved as facts; and this court can no more look outside of the bill of exceptions, to ascertain what the statute laws of another State are, than it would to ascertain any other facts.—Story on Conflict of Laws, 527, § 637; Barnes v. Mobley, 21 Ala. 232; Inge v. Murphy, 10 Ala. 885; Richardson v. Williams, 2 Porter, 249. The sections of the Code of Louisiana, referred to in the bill of exceptions, are not set out; and we cannot look into the Code of Louisiana, for the purpose of ascertaining what those sections contain. In doing so, we should violate a principle of law well recognized in this court, and take judicial notice of what the statute laws of a sister State are.

It is unquestionably the law, that whatever title Mrs. Drake may have acquired in Louisiana, while she and her husband were domiciled in that State, would be

unimpaired by the change of the matrimonial domicile and the removal of the property to this State.—Doss v. Campbell, 19 Ala. 590. But the mode of conveying the property, after its removal, and the change of domicile to this State, must be governed by the laws of this State, and not by the laws of Louisiana. The *lex loci contractus* governs, "as to the nature, the obligation, and the interpretation of a contract."—Story on Conflict of Laws, 219, § 263; McDougald's Adm'r v. Rutherford, at the present term. An exception prevails, as to stocks and other like property, owing its existence to, or regulated by peculiar local laws; but it is clear that the transfer in this State of any personal property, being in this State at the time, by parties domiciled in this State, is valid or invalid according as it may or may not conform to and consist with the laws of this State.—Story on Conflict of Laws, 314, § 363.

It follows from what we have said, that the mode of transferring, and the validity of a transfer by Mrs. Drake, after she became domiciled, and had her property with her in the State of Alabama, is to be determined by the laws of this State, where the transfer is alleged to have been made, and not by the laws of Louisiana. From the three charges given by the court, we perceive that it acted upon the idea, that the laws of Louisiana did not prohibit the alienation of the property, but merely prescribed the mode of alienation. We, therefore, confine ourselves to the question, whether the mode of alienation and transfer, directed in the Louisiana law, is obligatory in this State. As the transfer is to be governed by the laws of this State, it is competent for us to pass upon the second and third charges, although we have not the Louisiana law before us.

As the separate estate of Mrs. Drake in the slave sued for accrued under the laws of another State, and is not a separate estate created by the statutes of our State, it is not governed, as to the mode of its transfer and conveyance, by section 1984 of the Code; and therefore, it is not indispensable to the validity of a transfer of her title to the slave, that it should be conveyed in writing, jointly

by the husband and wife.—Gerald and Wife v. McKenzie, 27 Ala. 166; Friend v. Oliver, *ib.* 532; Hardy v. Boaz, 29 Ala. 168.

The second charge given asserts two distinct propositions: 1st, that if Mrs. Drake was present, and assented to the sale by Rainer, she ratified the sale, and was estopped from denying the authority of Rainer to sell; 2d, that if Mrs. Drake knew of the sale, and the execution of the bill of sale, and did not object to the same, she ratified the sale, and was estopped from denying the authority of Rainer to sell. The former is a correct legal proposition. The latter is incorrect. The mere fact that Mrs. Drake knew of an unauthorized sale of her property, and did not object, does not, of itself, amount to an estoppel. To constitute an estoppel by mere silence, the party upon whom it is sought to visit the estoppel must be present. The rule is, "that where one knowingly suffers another, in his presence, to purchase property, to which he has a claim or title, which he willfully conceals, he will be deemed under such circumstances to have waived his claim, and will not afterwards be permitted to assert it against the purchaser or his privies." The charge was clearly wrong, in assuming that the failure of Mrs. Drake to object to an unauthorized sale of her property, of which she knew, would estop her. Conceding that the rule applies to her, she could not be estopped, unless she was present, and being present omitted to object.

But we are of the opinion, that this doctrine of estoppel for a mere omission to assert one's right, does not apply to the wife, where her husband makes an unauthorized sale of her property in her presence. The authorities to that effect seem clear and satisfactory, and it is the only doctrine which can be reconciled with the theory of the coercion of the husband's presence.—McIntosh v. Smith, 2 La. Annual R. 756; Palmer v. Cross, 1 Smedes & Marsh. 48; Bank of the United States v. Lee, 13 Peters, 107; Jackson v. Hobhouse, 2 Mer. 482, bottom page 363. It is true that coverture is, as a general rule, no protection against the effect of silence, when it is a married woman's duty to speak, in order to prevent an unauthor-

ized sale of her property to an innocent person.—1 Story's Equity, 414, § 385; Fonblanque's Equity, book 1, ch. 3, § 1, page 164; Savage v. Foster, 9 Mod. 35–38; Beckett v. Cordley, 1 Bro. Ch. R. 353, 358; 2 Sugden on Vend. 263. But we think it would be inconsistent with the view which the law itself takes of the conjugal relation, to require the wife to interpose against her husband, when in her presence he sells her property. If, however, it should appear that the silence of the wife was fraudulent, in fact, and not the result of marital restraint, she would be estopped.—Wilkes v. Fitzpatrick, 1 Humph. 54.

The third charge is obnoxious to the same objection, which we have already decided is applicable to the second. It makes the wife's failure to object to a sale of which she knew, without regard to whether she was present or not, amount to an estoppel. For that reason, it is, in our opinion, erroneous.

The court having erred as above stated, the judgment must be reversed, unless it had been affirmatively shown that the party sustained no injury by the errors in the charges. We cannot intend, under this rule, that if the Louisiana statutes had been set out in the bill of exceptions, they would have shown the absence of all injury from the charges. The presumption is of injury where there is error.

The judgment of the court below is reversed, and the cause remanded.