# Walker v. Elledge.

*Bill in Equity by Wife, against Judgment Creditor of Husband, to Establish Trust in Lands, and Enjoin Action at Law.*

1. *Decree in chancery against husband, declaring trust in land in favor of wife; effect as evidence against creditor of husband.*—A decree in chancery against the husband, declaring a trust in favor of the wife in lands purchased and partly paid for with moneys belonging to her, and vesting the title in her to the extent of her moneys so used, is not evidence against a creditor of the husband, who was not made a party to the suit, and whose debt was created before the bill was filed; consequently, when the wife seeks to enjoin an action at law by the creditor, founded on a purchase at execution sale on his judgment, she must prove the investment of her moneys in the land, without the aid of the decree.

2. *Resulting trust in lands; exchange of tracts.*—When a tract of land, bought by the husband with money belonging to the wife, is sold and exchanged by him for another tract, the exchange does not affect her right to pursue her money and fasten a trust on the lands received in the exchange.

3. *Declarations in disparagement of title.*—The declarations of the husband, in disparagement of his own title, admitting that his wife had an equitable interest in lands which he had partly paid for with her moneys, made while negotiating an exchange of the lands, are admissible evidence for the wife, against a subsequent purchaser at execution sale against the husband.

4. *Lien of judgments and executions.*—Under our statutes (Code, § 3210), a judgment is not a lien on lands, and the lien of an execution, which attaches only from the time the writ is placed in the hands of the sheriff to be levied, is lost by the lapse of an entire term between the return of one and the issue of another.

5. *Secret or resulting trust; against whom asserted.*—A latent equity in lands, such as a right to charge them in equity with a resulting trust in favor of the person whose money was used in paying for them, cannot prevail against "the title of creditors, or purchasers for a valuable consideration, without notice." (Code, § 2200.)

6. *Same; who are creditors, and when chargeable with notice.*—The term *creditors*, as used in this statute, means judgment creditors having a lien; and if a suit is pending to enforce a trust in the lands when the lien of the creditor attaches, he is chargeable with constructive notice of it, and can not claim the protection of the statute.

7. *Same; rights of purchaser at execution sale.*—When a creditor purchases under his own execution, although he may be chargeable with constructive notice of a latent equity or trust, he nevertheless acquires all the rights of the defendant in execution, against whom the trust is claimed and asserted.

APPEAL from the Chancery Court of Limestone.

Heard before the Hon. H. C. SPEAKE.

The original bill in this case was filed on the 26th April, 1875, by Mrs. Mary A. Elledge, the wife of Joseph L. Elledge, against William H. Walker; and sought to enjoin an action at law, which said Walker had instituted against her to recover the possession of a tract of land, particularly de-

[Walker v. Elledge.]

scribed in the bill. Walker died pending the suit, and it was thereupon revived and prosecuted against his personal representative and heirs at law, who are the appellants in this court. Walker claimed the land, in the action of ejectment, under a purchase at sheriff's sale under an execution on a judgment at law, which he had recovered against said Joseph L. Elledge, the complainant's husband, on the 8th April, 1867 ; the sale being made on the 5th March, 1869, and the sheriff's deed to Walker, as the purchaser, being dated the same day. Mrs. Elledge was in possession of the land, by her tenants, claiming it as her own under a decree of the Chancery Court of said county, rendered in a suit which she had instituted against her said husband, seeking to remove him from the trusteeship of her statutory separate estate, on account of mental and physical incapacity to manage it, and to have the legal title to the lands now in controversy divested out of her husband, and vested in the complainant herself, on the ground that the purchase-money was paid with her funds, and the title taken in his name by mistake. The bill in that case was filed on the 4th *April*, 1867, though the affidavit subscribed to it is dated *May* 9th ; and the final decree of the chancellor was rendered on the 31st May, 1867, removing the complainant's husband from the trusteeship of her separate estate, cancelling the conveyance of the lands to him, and vesting the legal title thereto in the complainant. Mrs. Elledge was a daughter of James Cox, who died in said county of Limestone in the year 1850. Joseph L. Elledge became her guardian, and married her during her minority. Her claim to the lands in this suit, as in her former suit against her husband, was rested on the allegation that the money used in paying for it, or for another tract which was exchanged for it, was part of her distributive share of her father's estate, which her husband received as her guardian and trustee, and other moneys derived from the estate of William Shores, who was her maternal grandfather ; and she charged that Walker had knowledge and notice, actual and constructive, of her asserted rights, when he had the lands levied on and sold. The material facts, as the case is here presented, are stated in the opinion of the court.

The chancellor overruled demurrers to the bills, original and amended, and held the complainant entitled to relief ; and he rendered a decree, perpetually enjoining the action at law, and ordering the cancellation of the sheriff's deed to Walker. The overruling of the demurrer, and the final decree, are now assigned as error, together with the chancellor's rulings on various questions of evidence.

VOL. LXV.

[Walker v. Elledge.]

R. A. McCLELLAN, for appellant.

MALONE & PRYOR, *contra.* (No briefs on file.)

STONE, J.—We think there is a failure to prove that Mr. Elledge was mentally incapable of understanding and transacting business, at any time which is material to be inquired about, in determining the present controversy. True, he was partially paralyzed; but those best acquainted with him say, his reasoning powers were very little impaired, if at all. Hence, so far as the question affects any transaction brought to view in this record, we think the testimony fails to overturn the presumption of sanity, which it is our duty to indulge until the contrary is shown.

The testimony convinces us, that Mr. Elledge was indebted to Mr. Walker, in the sum for which the latter recovered judgment, and that that indebtedness existed long before Mrs. Elledge filed her bill against her husband, to have the lands in controversy decreed to her. This being the case, it becomes necessary for Mrs. Elledge to prove the indebtedness of her husband to her, as the basis and foundation of the relief she seeks. Her suit and recovery against her husband are, in no sense, evidence against Walker, of the facts found and asserted in the decree, because the latter was not a party to that suit.—2 Brick. Dig. 148, § 236; 1 *Ib.* 823, § 273; 1 Greenl. Ev. § 522. In this proceeding, Mrs. Elledge must prove her husband's indebtedness to her, or, rather, the investment of her money in the lands, by as convincing testimony, as if there had been no former suit against her husband.

2. We have examined the testimony in this record with great care, and we reject from our consideration all that we deem hearsay and illegal. The record of the final settlement of James Cox's estate, made February 4th, 1856, shows money assets coming to Mrs. Elledge at that time, amounting to $3,912.53. Probably some interest included in this. This sum, or the principal which produced this sum, had been previously paid to Mr. Elledge, the husband; but the record does not inform us when it was paid. Shores, Mrs. Elledge's grandfather, died about 1856. Elledge was administrator of his estate, and made a partial settlement March 8th, 1858. There was then distributed to Mrs. Elledge $316.20, which Mr. Elledge retained in his hands, as husband and trustee. Whether there was a final settlement of that estate ever made, and, if so, whether there was further distribution, the record does not inform us. Mrs. Elledge testifies, that there came to her, from her grandfather's

and grandmother's estates, about $500; and her brother, James B. Cox, testifies that he received about $500 from his grandfather's estate. Mrs. Elledge probably received the same sum he did. The record fails to show us when Mrs. Shores' estate was administered and settled, if there was an administration. Those are all the sources, and these the amounts, of moneys which came to the hands of Elledge, as husband and trustee.

The lands belonging to the estate of James Cox, father of Mrs. Elledge, were sold for division about the close of the year 1850. The sale was on a credit of one, two, and three years; and Elledge, the husband, and Wm. Cox, brother of Mrs. Elledge, became the joint purchasers of the homestead tract, at a price between eight and nine thousand dollars. They cultivated these lands together, and were tenants in common, until 1854. They then sold this tract to Bridgeforth, mainly or entirely on credit; and about the same time, 1854, purchased jointly the tract of land in controversy; a smaller, but more fertile tract; and paid most of the purchase-money in purchase-money notes given them by Bridgeforth. A small balance—three or four hundred dollars, probably—they paid, by agreement, to the estate of James Cox, balance of purchase-money for the lands, which Stinnett, their vendor, still owed to the estate. Thus, Elledge and William Cox became tenants in common of the Stinnett tract, and, for a time, cultivated it as such. At some time between 1854 and 1860—probably about 1858—Wm. Cox removed from the State of Alabama, having first sold his interest in the lands to Elledge. There is some testimony that two slaves, property of Mrs. Elledge, were used or sold in part payment of some of these purchases. There is, also, some testimony that, in dividing the slaves of the estate of James Cox, two were sold as a means of equalizing the division, and that Elledge and William Cox became the purchasers of these slaves. Whether these are the slaves which Mrs. Ellledge claims were hers, and were sold in part payment for the lands, is a question not satisfactorily answered in the record. In fact, this part of the transaction is left in great obscurity. The fact, it it be a fact, that Mrs. Elledge's money and means were first invested in the Bridgeforth, or home tract, and, when it was sold, were reinvested in the Stinnett tract, can exert no influence upon her right to pursue her money, and fasten an equity on the last named tract. If the necessary facts be established, her equitable rights are the same against the second, as against the first investment.—*Marsh v. Marsh*, 43 Ala. 677.

The result of the evidence in this case is to establish, to

[Walker v. Elledge.]

our reasonable satisfaction, the following facts: That Elledge and Wm. Cox purchased jointly, and jointly owned, the home, or Bridgeforth tract, and paid for it by or before the year 1854; that Elledge used and employed the pecuniary distributive interest of his wife in her father's estate, in paying for his half of this purchase; and that this same fund, after the sale to Bridgeforth, was invested in the purchase of the Stinnett tract; that is, in Elledge's undivided half of the purchase. To this extent, the testimony is satisfactory. We regard what Elledge said in disparagement of his title, at the time he was negotiating the sale to Bridgeforth, as legal evidence on this question.—1 Brick. Dig. 843, §§ 558, 559, 565, 567; *Barnes v Mobley*, 21 Ala. 232. There is a failure of proof that, up to this time, Elledge had received any moneys on account of his wife, other than that which came from her father's estate. We attach no importance to the fact that the settlement of the Cox estate took place after this—in 1856. We are convinced the wife's pecuniary distributive interest had been used in paying for Elledge's half of the purchase. There is no satisfactory proof that any other moneys of Mrs. Elledge entered into either of these purchases. There is a failure to show she had any other moneys. Shores, her grandfather, was then living, and, of course, nothing from his estate could have been used in making these purchases. There is no testimony tending to show William Cox did not pay his half of the original purchase, or of the purchase from Stinnett; and we must presume he did so. Up to this time, then, Elledge had purchased only an undivided half of the land; and, of course, his wife's money could only have paid for an undivided half, if so much. Elledge subsequently purchased William Cox's half of the Stinnett land. The proof as to how this was paid for is not clear. Mrs. Elledge testifies that two of her slaves were used, or sold, in paying for the lands; whether in this purchase or not, she does not testify. The proof as to how Elledge paid Wm. Cox for his undivided half of the Stinnett tract is too indefinite and unsatisfactory for us to affirm any thing in regard to it. If any of the slaves owned by Mrs. Elledge, or her distributive shares in the Shores' estate, went into this purchase, it has not been proved. We hold, that Mrs. Elledge has established an equity in and against an undivided half interest in the Stinnett land, for the pecuniary distributive interest her husband received in her right from her father's estate; and she is entitled to interest on this, from the time her husband was removed as her trustee, by the decree of the Chancery Court. She is entitled, also, to similar relief, as to any other part of her

property, which entered into the payment of the land-purchase; and if any of her money or property was employed in paying William Cox for his undivided half of the lands, she is entitled to the same relief against that undivided half, to the extent her means so paid for it. We say she has established an equity. We mean, such would be the extent of her claim against her husband, if this were her first attempt to assert her rights, and no former suit had been instituted for the purpose of devesting the legal title out of her husband and trustee. Of course, as against him, the former decree vests the legal title in her; and, if this were a suit between Mrs. Elledge and her husband, he could obtain no relief.—2 Brick. Dig. 145, §§ 203, 204, 209; 1 Brick. Dig. 823, § 274.

We have declared above what would be Mrs. Elledge's claim, if this were an original suit by her against her husband. We have done so, because this is the light in which we must regard her claim in a suit against Walker, who was a creditor of Elledge before she asserted her claim, and who was no party to the suit by which title was devested out of Elledge, and vested in her. As we have said, that suit and that decree can not prejudice his rights. If he would have the right to proceed against the land in the absence of such suit and decree, that right has not been taken away from him by the decree, farther than it may be affected by the notice those proceedings give, hereafter to be considered.

4. Walker, the defendant, recovered judgment against Elledge, April 8th, 1867. The transcript of that recovery is twice copied in the record, and in each place, the date of the judgment is given on April 8th, 1868. This is evidently a mistake. The bill of Mrs. Elledge charges it was rendered April 8th, 1867; and each of the transcripts shows the first execution on this judgment was issued April 22d, 1867. Execution could not be issued in 1867, on a judgment rendered in 1868. The transcripts show, as we have said, that execution issued on this judgment, April 22d, 1867. It is not shown whether or not this execution went into the hands of the sheriff. The statement in the certified transcript, which seems to have been received without objection, is, that on "said judgment sundry executions were issued, the first of which was issued on the 22d April, 1867; and one of which was issued on the 28th January, 1869, to Wm. H. Lentz, then sheriff of Limestone county in the State of Alabama; and was levied by said sheriff on the lands," &c. Under this execution and levy, the lands in controversy were sold by the sheriff, and bought by Walker, who received the sheriff's deed. Judgments are not liens in this State, as the law then stood, and now stands.—*Dane v. McArthur*, 57 Ala. 448; *Gamble v. Fow-*

[Walker v. Elledge.]

*ler*, 58 Ala. 576.   The lien attaches only from the time the execution is received by the sheriff; and it is lost, if there is a lapse of one entire term between the return of one execution, and the issue of the next.—Code of 1876, § 3210 (2872). Aside from the want of proof that this first execution went into the hands of the sheriff, the record fails to show when any execution was issued, after the first, until January 28th, 1869; a lapse of more than twenty-one months.   Mr. Walker can assert no lien that dates beyond the time when this last named execution was received by the sheriff.   This, at most, was January 28th, 1869.

5. We have shown above that Mrs. Elledge, as against her husband, has an equitable lien for the sum of her money and effects which went into the purchase of the land, with interest upon it from the time her husband was removed as her trustee.   This, until she asserted it by suit, is what is called a latent equity; good against the trustee, but unavailing against "the title of creditors, or purchasers for a valuable consideration, without notice."—Code of 1876, § 2200.   In *Preston & Stetson v. McMillan*, 58 Ala. 84–94, we construed this and connected sections of the Code, and held, that "creditors, under this statute, are judgment creditors having a lien."   That case contains a full discussion of this question, and we will not repeat it here.   Was Walker a creditor without notice, at the time he acquired his execution lien?

6. Mrs. Elledge commenced her suit against her husband in May, 1867; and on the 31st day of that month the decree of the chancellor was rendered, removing her husband from the trust, vesting the title of the lands in her, and clothing her with all the rights and powers of a *feme sole*.   This suit and decree, concerning this identical land, was constructive notice to Mr. Walker, and all others, of the equitable claim she asserted, and disarms him of all right to claim as a creditor without notice.   He occupies no higher ground than Elledge himself would have occupied, if this were an original suit against the latter, to have the trust declared.—*Doe ex dem. v. Magee*, 8 Ala. 570; *Center v. P. & M. Bank*, 22 Ala. 743, 757; *Fash v. Ravesies*, 32 Ala. 451, 456; 2 Brick. Dig. 233, §§ 4, 5.

7. Another important result flows from the principles we have declared above.   Mr. Walker not being a party to the suit instituted and prosecuted by Mrs. Elledge against her husband, that suit, and the decree rendered therein, have no other effect on his rights than to charge him with notice of Mrs. Elledge's equity.   It did not, as to him, devest the title out of Elledge, but left all the right and interest of the latter subject to seizure and sale under Walker's execution.   By

his purchase, and the sheriff's deed, Walker succeeded to all the rights Elledge would have had in the lands, if there had been no decree of the Chancery Court in that former suit; that is, all the title to the land, subject, and only subject, to Mrs. Elledge's equity, of which the former suit gave him notice. Reaching this result, it becomes unnecessary to offer argument in support of the equity of the present bill. It is a suit to fasten a trust on the land, for the effects of Mrs. Elledge which entered into its purchase, and must be governed by all the equities which pertain to such a suit.

The decree of the Chancery Court is reversed, and we proceed to render the decree the Chancery Court should have rendered. It is therefore ordered and decreed, that complainant, Mrs. Elledge, is entitled to relief. This she can claim under her prayer for general relief. It is referred to the register to take and state an account, showing the amount and value of complainant's money and effects which went, first, into the purchase from Stinnett of the undivided half interest in the lands ; and in taking this part of the account, she will be entitled to have allowed to her any effects of hers which went first into the purchase of the home tract, and, upon a sale of that tract to Bridgeforth, was then invested in the Stinnett tract. Second, if any of her effects were used in the purchase from William Cox of his undivided half interest, she must be allowed the value of the same as a lien and trust on that undivided half. She will be entitled to interest on these sums from May 31st, 1867. She is liable for reasonable rents of the lands from the time Walker's right accrued, or from the time he could claim rents under his suit in ejectment, with interest on the sums annually due ; and must be allowed credit from each year's rent, for taxes paid, and necessary repairs and improvements put on the property during the year. For any balance found due her, she will be entitled to a decree fastening a lien on the land, and decreeing its sale in payment thereof, unless otherwise paid. In passing on this account, the register will consult the legal testimony, documentary and parol, found in this record, the admissions in the pleadings, and any other relevant testimony that may be offered. He may re-examine any of the witnesses heretofore examined, on the questions herein referred. He will report his finding to the Chancery Court. Let the injunction of the action of ejectment remain in force, until the further order of the chancellor. All other questions are left open for decision by the chancellor. Let the appellee pay the costs of this appeal.