# Williams *v.* Baldridge.

*Bill in Equity by Trustee, to enforce Vendor's Lien on Land.*

1. *Estoppel en pais against married woman, as to equitable separate estate.*—A married woman, owning an equitable separate estate in lands, may contract in reference to it, or bind it by an estoppel, as if she were a *femme sole;* and if, without fraud or mistake, with full knowledge of the facts, and without coercion on the part of her husband, she induces a stranger to purchase from her trustee, she can not afterwards impeach the sale.

2. *Purchase of lands held in trust; when purchaser will be protected in payment of purchase-money.*—A purchaser of lands held in trust for a married woman and her children as remainder-men, who is induced by her representations to enter into the contract with her trustee, will be protected in the payment of the purchase-money as stipulated, before notice of dissent on her part; but, if he executes his notes for the purchase-money, payable to creditors of the husband, and she files a bill to enforce a vendor's lien on the land, or such bill is filed by a succeeding trustee with her approval, the purchase-money can not be appropriated, against her consent, to the payment of such notes.

[Williams v. Baldridge.]

APPEAL from the Chancery Court of Lauderdale.

Heard before the Hon. H. C. SPEAKE.

The bill in this case was filed on the 30th April, 1870, by Milton C. Baldridge, as trustee for Mrs. Eliza M. Neely and her children, against David J. Cannon, his predecessor in the trust, Jonathan M. Cunningham, and Mrs. Sarah A. E. Williams. The prayer of the original bill was, that a sale of lands alleged to have been made by said Cannon, as trustee, to Mrs. Williams, "be declared null and void, and that said Sarah E. Williams be required to deliver the possession of said lands to complainant without delay; or, if the court should be of opinion that said sale was authorized by the provisions of said deed," by which the trust was created, "and should be confirmed, then complainant prays that the purchase-money, with the interest thereon, be decreed to be paid to complainant, as trustee, for the use and benefit of said Eliza M. and her children, according to the provisions of said deed," and also for an account of rents, and of waste and damages to the lands. An amended bill seems to have been filed without objection, which, as copied in the transcript, immediately after the original bill, without the signature of counsel, or any memorandum showing when it was filed, is as follows; "The defendant, by leave of the court, having amended her answer, by striking out the latter part of the fourth paragraph thereof, to-wit: 'Respondent, further answering, says that she is willing and ready to comply with her said contract, and here now offers to pay any balance of the purchase-money of said land, if indeed any is due, after giving credit for the cash paid, and the debts of said Eliza assumed and paid by respondent'; complainant amends the prayer of his bill, by leave of the court, and prays the court, if mistaken in the relief prayed, that the court will declare a vendor's lien to exist on said lands, for the balance of the purchase-money due on said lands, and in favor of complainant; and that the court will order an account taken, to ascertain the balance so due, and will decree a sale of said land for the payment thereof."

The trust was created by a deed of gift executed by David Cannon, the father of said David J. Cannon and of Mrs. Neely, which was dated the 22d August, 1842, and by which certain lands and slaves were conveyed to said David J. Cannon upon the following trusts: "That he, the said David James Cannon, shall, during the life-time of said Elizabeth Neely, wife of the said Anderson P. Neely, so use and employ the services of the said slaves and their increase, and so dispose of the land and proceeds thereof, as best to promote and advance the interest of the said Eliza M. Neely and the heirs

of her body ; and shall appropriate the labor and profits of the services of said slaves, and the proceeds and income of the said land, to the sole use and benefit of her, the said Eliza M., and her children, for their support and maintenance, or for the purpose of purchasing other property for her separate use, and which, when purchased, shall form a part of the trust fund in the hands of the said David James Cannon, and subject to the same uses that the slaves and land herein conveyed are made to be. And upon this further trust, that at the death of the said Eliza M. the property hereby conveyed, and its increase, together with such as may be added thereto by the trustee by purchase, shall be equally divided among the heirs of her body who may survive her, and the descendants of any such as may die before she does ; and should she die without heirs of her body, and her said husband should survive her, then he shall use and enjoy the labor of said slaves, and the use of said land, during his natural life, and at his death the said slaves and land shall be divided equally among them who may at that time be ths heirs at law of the said Eliza M. Neely."

Said David J. Cannon accepted the trust created by the deed, and continued to act as trustee until the latter part of the year 1860, when he removed to Arkansas ; and he was afterwards removed by the decree of the said Chancery Court, as the bill alleged, and the complainant was appointed trustee in his stead ; but the record does not show when this decree was rendered. The bill alleged, in the 2d and 3d paragraphs, that on the 16th February, 1850, the said Cannon as trustee, with the consent and approval of Mrs. Neely and her husband, sold the lands conveyed by the deed of gift, to said J. M. Cunningham, one of the defendants ; that this sale was approved and confirmed by the said Chancery Court, and a conveyance executed by the trustee, under its order, to said Cunningham ; that the proceeds of sale were invested by the trustee in another tract of land, purchased from John E. Moore, on which Mrs. Neely and her family continued to reside for several years, until the health of the family rendered it prudent for them to remove to another locality ; that the trustee, with the consent and approval of Mrs. Neely and her husband, afterwards (at what time is not stated) sold said tract of land to James Kyle, at the price of $3,300 ; that this sale was approved and sanctioned by the said Chancery Court, and the trustee was ordered to execute a conveyance to said Kyle ; and that in said decree the following order was made : "It is further adjudged and decreed, that the complainant, David J. Cannon, trustee, invest the said sum of $3,300 for the benefit and use of said Eliza M. Neely and her children,

[Williams v. Baldridge.]

according to the restrictions and limitations contained in the said deed of David Cannon." The orders and decrees in the matter of this sale and its confirmation, "as far as may be necessary, are referred to as a part of" the bill, but are nowhere set out in the record,

The subsequent acts of the trustee in relation to this purchase-money, and the sale of lands to Mrs. Sarah Williams, as to which relief is sought in this suit, are thus stated in the 3d, 4th, and 5th paragraphs of the bill: "3. Complainant charges, upon information which he believes to be true, that said D. J. Cannon, as trustee, invested a portion of said purchase-money in a tract of land of which he himself was the owner, the said Eliza M. and her husband agreeing to the same; and he delivered up the possession of said land to the said Eliza M. and her husband, who moved on said lands, and occupied and cultivated the same for a number of years." Said tract of land is then described as a quarter section, less four acres and a half, containing 155.5 acres. "The price agreed on for said tract of land was $1,250, which amount said Cannon retained out of the trust funds, for his own use, and held the land as trustee for said Eliza M. and her children, according to the provisions of said deed of trust and the decree of said court. 4. Complainant further charges, that said David J. Cannon, as trustee, invested $1,250 of said funds in his hands, in another tract of land, which he bought from said Jonathan M. Cunningham, being" a tract particularly described, and alleged to contain 95 acres; "the purchase-money for said land being paid out of said trust fund to said Cunningham, and the possession of said land being given to said Eliza M. and her husband. 5. Complainant further charges, upon information which he believes to be true, that in the year 1860 said Anderson P. Neely determined to remove with his family to Arkansas, and said David J. Cannon was also about to remove to that State; and the said Cannon bargained for the sale of said land to one John D. Williams, for the sum of $2,500, for which, as complainant is informed, said Williams executed his notes, either to the said Cannon as trustee, or to creditors of said Anderson P. Neely, in payment of his debts; but said notes, or a large portion of them, have never been paid, either to said Cannon or to said creditors, and the same is still due and unpaid." The subsequent paragraphs of the bill alleged, that said J. D. Williams afterwards died, during the latter part of the year 1860; that Mrs. Williams continued in the possession of the lands up to the filing of the bill, claiming one part under a deed from said David J. Cannon, and the other part under a deed from said J. M. Cunningham; that these lands were

thus purchased with the trust funds in the hands of said Can-
non as trustee, and were thus sold without authority of law;
that the said attempted sale by Cannon was wholly null and
void, " and that the attempt to sell and apply the proceeds
of sale to the payment of the debts of said Anderson P. Neely
was a violation of the trust by said trustee, and a fraud in law
upon the rights of the said Eliza M. and her children." Upon
these facts, the bill prayed relief as above stated.

A decree *pro confesso* was regularly taken against Cannon,
and also against Cunningham; but the decree against the
latter was set aside, and an answer filed by him, which
requires no notice, as he died pending the suit, and there was
no revivor against his legal representatives. A decree *pro
confesso* was also entered against Mrs. Williams, and the record
contains no order setting it aside; but an answer was filed
by her, and also two pleas claiming protection as a *bona fide*
purchaser for value, neither of which alleges payment of the
purchase-money before notice. The following are the mate-
rial allegations of the answer : "*Answering the 3d paragraph*
of said bill, respondent denies the facts therein stated by
complainant on information, and denies that said David J.
Cannon, as trustee for the said Eliza M. and her children,
invested any of the funds or money of said Eliza in said lands
described in said paragraph of the bill, and denies that said
Cannon, as trustee, invested the money arising from the sale
of the lands to Kyle, in said land, according to the provisions
of said deed of trust, or the decree of said court. Respond-
ent says that, on the 30th October, 1860, she purchased of
said D. J. Cannon in his individual capacity, and not as trus-
tee, the lands described in said paragraph of the bill, and
paid for the same; and that said Cannon and his wife exe-
cuted to her their deed in fee simple for said land, as appears
from a certified copy," appended to the answer as an exhibit.
"*In answer to the 4th paragraph* of said bill, respondent says
that at the same time she purchased of said David J. Cun-
ningham, one of the firm of Cunningham & Cannon, the lands
described in said 4th paragraph, and paid for the same; that
said firm had purchased said lands from said J. M. Cunning-
ham, who had never made a deed to them, and the deed to
said lands was made by him, by their direction, directly to
respondent, as will appear by reference to a copy," made an
exhibit to the answer. "Respondent denies that said lands
were purchased or paid for out of the trust funds of the said
Eliza M. Neely, and says that said lands were purchased
from said J. M. Cunningham by the firm of Cunningham &
Cannon, and sold to respondent, and paid for by her, and a
deed executed to her as above stated. *In answer to the 5th*

*paragraph* of said bill, respondent says, it is true that said Neely and family, and also said Cannon, removed to Arkansas in 1860. Respondent admits that she purchased said lands, as already stated, and gave $2,500 for them. Part of the purchase-money was paid in cash, the precise amount of which respondent can not state; but she knows that $1,000 was paid, and she is informed and believes, and upon such information and belief charges the fact to be, that $1,500 was paid in notes executed to such persons as the said Cannon wished and directed. Respondent states that a part of the purchase-money was paid in a claim due by said complainant, M. C. Baldridge, to the estate of respondent's father, Terry Bradley, and paid to her by the administrator of said estate, who was also her guardian. Respondent denies that said lands, so purchased, belonged to said Eliza M. Neely, or were held by said Cannon as her trustee, and demands legal proof thereof. Respondent bought said lands of said Cannon individually, and as a member of the firm of Cunningham & Cannon, and paid for the same as said Cannon desired, part in money, and part by assuming debts to other parties; and respondent says, if said Cannon has abused his trust, and defrauded his *cestui que trust*, the said Eliza, who is his sister, he did it without the knowledge of this respondent; and she further states and charges, that she is a *bona fide* purchaser, ignorant of the fraud, if there was any fraud on the part of the said trustee, and that she paid a valuable consideration for said lands." The last paragraph of the answer was struck out by amendment, as above stated.

The deposition of said David J. Cannon was taken at the instance of the complainant, cross-interrogatories being filed by Mrs. Williams. This witness, in answer to the direct interrogatories, testified to the facts connected with the several sales of land, and the investment of the trust funds, substantially as alleged in the bill; and further stated, in answer to the cross-interrogatories, that the sale of the lands to Mrs. Williams and her husband was made by said A. P. Neely and his wife, who desired to remove to Arkansas; that he assented to the sale at their instance and request, and executed to Mrs. Williams a deed for that part of the land of which the legal title was in him, while Cunningham executed to her a deed for the other portion, the legal title to which was yet in him; and that he required from the said A. P. Neely, and from those children who were then grown, a bond of indemnity against any liability he might incur by the said sale to Williams and wife, a copy of which bond was made an exhibit to his deposition.

The cause being submitted for final decree, on pleadings

[Williams v. Baldridge.]

and proof, the chancellor delivered an opinion, as follows: "There can be no doubt, under the proof, that Cannon sold the lands described in the bill to A. P. Neely and wife, and that the same was paid for with the trust funds in the hands of Cannon, derived from the sale of the lands to Kyle; or that, of such trust funds, Cannon, on a settlement, would and did owe enough to pay for said lands. This being so, the land would, in a court of equity, be treated and recognized as belonging to the trust estate. The indemnifying bond, executed by the beneficiaries, recognized and treated the land as belonging to the trust estate, and as a part thereof. Mrs. Williams can not be treated as a purchaser for valuable consideration without notice, unless she shows that she has paid the entire purchase-money promised to be paid by her before she had any notice. Admitting that she had no notice of the trust in favor of the complainant, yet, not having paid, she can not be damaged or injured. The proof shows that she boarded with Mrs. Neely, and knew her claims to the land, and must have known that, while the legal title was not in Mrs. Neely, the equitable title was. The sale made to her by the trustee, if she had paid the money, might have been upheld in a court of equity, and she protected; but, not having paid all the money, she can only be protected, in any event, to the amount of her payments. The appropriation of the trust funds to paying the individual debts of A. P. Neely was clearly against the provisions of the trust created by the deed of David Cannon; and whenever the beneficiaries repudiated the transaction, and such appropriation of the trust funds, and gave her notice thereof, she could clearly resist recovery, in the hands of others, of the various notes given by her for the lands by her purchased. She can only be allowed credit for payments made by her before notice of the claim thereto by the complainant. Mrs. Williams being a married woman at the time of the execution of the notes, no personal decree can or will be rendered against her. The balance due and unpaid on the lands will be ascertained, after giving her credit for $166 and $160, as shown by the depositions of Karsner and Baker, and a sale of the lands be decreed for the satisfaction of said balance. The doctrine of estoppel, contended for by the defendant, might and would apply, provided Mrs. Williams had paid for the land; but, not having paid for it, the notes she gave stand in lieu of the land as trust property, and are a lien thereon for the amount remaining unpaid."

The chancellor's decree, in accordance with this opinion, is now assigned as error.

[Jenkins v. Harrison.]

O'NEAL & PICKETT, for appellant.

W. J. WOOD, *contra*.

BRICKELL, C. J.—It may be admitted that, if Mrs. Williams had paid the purchase-money of the lands in controversy, Mrs. Neely, though a married woman, and her children, the remaindermen, would be estopped from asserting any claim to them. The life estate of Mrs. Neely in the lands, or in the funds invested by the trustee (Cannon) in the purchase, was an equitable, not a statutory separate estate. She had the capacity of a *femme sole* to contract in reference to the estate, not being restrained by the terms and limitations of the instrument creating it. Having this capacity, she could bind her estate by an estoppel; and if, without fraud or mistake, and without coercion from her husband, having full knowledge of her rights, she induced a stranger to purchase of the trustee, she could not subsequently impeach the sale.—*Drake v. Glover*, 30 Ala. 382. But, Mrs. Williams not having paid the purchase-money, there is no room for claiming an estoppel; nor is there room for its operation in any aspect of the case. The bill, as amended, is in affirmation, not in repudiation of the sale. Its whole purpose is to enforce a lien on the lands for the unpaid purchase-money, and that was the measure of relief granted by the chancellor.

The execution of notes by Mrs. Williams, for part of the purchase-money, payable to creditors of the husband of Mrs. Neely, was not a payment, *pro tanto*, of the purchase-money. If these notes had been paid, without notice that they were repudiated by Mrs. Neely, a different question would have been presented. They have not been paid, and to their payment the purchase-money can not be appropriated, against her consent.

We concur in the opinion and conclusions reached by the chancellor, and the decree is affirmed.